## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| FRANK DREW, | |
| Plaintiff, | Case No. 1:25-cv-02256 |
| v. | Judge Joan Lefkow, District Judge |
| CITY OF EVANSTON; JEFF JAMRAZ; JAMES HUTTON; SAMANTHA RULE, as Special Representative for MARK KOSTECKI, CARLOS MITCHEM, and CHARLES WERNICK; JOHN HOWARD; R. McCARTHY; MICHAEL GRESHAM; STEVEN GOEBEL; and COOK COUNTY, | Judge Beth Jantz, Magistrate Judge |
| Defendants. | **JURY TRIAL DEMANDED** |

## <u>FIRST AMENDED COMPLAINT</u>

Plaintiff Frank Drew complains against Defendants Jeff Jamraz; James Hutton; John Howard; R. McCarthy; Michael Gresham; Samantha Rule, as special representative for Charles Wernick, Carlos Mitchem, and Mark Kostecki[1]; Steven Goebel; the City of Evanston; and Cook County, as follows:

### INTRODUCTION

1.      Frank Drew was 18 years old when officers of the Evanston Police Department framed him for the 1996 murder of Ronald Walker. He spent 24 years in prison for a crime he did not commit.

---

[1] Plaintiff files this Amended Complaint with written consent of all parties, pursuant to Federal Rule of Civil Procedure 15(a)(2), and in accordance with this Court's orders substituting Samantha Rule as representative for Defendants Wernick, Mitchem, and Kostecki, ECF Nos. 66, 86.

2.      Not one piece of physical evidence, nor a single eyewitness—and there were many—implicated Plaintiff in the crime. In fact, *seven eyewitnesses* identified a different person—who looked nothing like Plaintiff—as Walker's killer.

3.      Police set their sights on Plaintiff more than a year after the crime, despite having no reason to believe he was involved.

4.      Eager to close the case, police coerced false witness statements implicating Plaintiff, fabricated police reports, and beat and interrogated Plaintiff for hours until they extracted a false confession.

5.      Based on that false and fabricated evidence, police arrested Plaintiff and secured his trial and wrongful conviction for a murder they knew he did not commit.

6.      For the next two decades—more than half his life—Plaintiff fought to prove his innocence.

7.      More than 20 years after Plaintiff's arrest, the criminal court vacated his conviction, and the State later dropped all charges against him.

8.      Plaintiff now seeks justice for the loss of his liberty and terrible hardship he endured and continues to suffer because of the defendants' misconduct.

## JURISDICTION AND VENUE

9.      Plaintiff brings this action under 42 U.S.C. § 1983 and Illinois law to redress the defendants' tortious conduct and their deprivation of his rights secured by the United States Constitution.

10.     This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over his state-law claims under 28 U.S.C. § 1367.

11. Venue is proper under 28 U.S.C. § 1391(b) because the events and omissions giving rise to his claims, including the investigation, prosecution, and trial resulting in Plaintiff's conviction, happened here.

**PARTIES**

12. Plaintiff Frank Drew is an individual who spent more than 24 years in prison for a murder he did not commit.

13. At all relevant times, Jeff Jamraz, James Hutton, Mark Kostecki, Carlos Mitchem, and John Howard were detectives at the Evanston Police Department acting under color of law and within the scope of their employment for the City of Evanston. Plaintiff sues each of these defendants in his individual capacity. Mitchem and Kostecki are deceased. The Court has appointed Samantha Rule as their representative for purposes of defending this lawsuit.

14. At all relevant times, Charles Wernick was a lieutenant at the Evanston Police Department, Defendant R. McCarthy was a sergeant, and Defendant Michael Gresham was a commander. Defendants Wernick, McCarthy, and Gresham supervised the detectives named above. They acted under color of law and within the scope of their employment for the City of Evanston. These supervisors directly participated in the misconduct that led to Plaintiff's wrongful conviction, and they also facilitated, condoned, approved, and turned a blind eye to their subordinates' misconduct. Wernick is deceased. The Court has appointed Samantha Rule as his representative for purposes of defending this lawsuit.

15. At all relevant times, Steven Goebel was an Assistant State's Attorney with the Cook County State's Attorney's Office acting under color of law and within the scope of his employment for Cook County, Illinois. He directly participated in the misconduct that led to Plaintiff's wrongful conviction.

16.     The City of Evanston is an Illinois municipal corporation that employs or employed Defendants Jamraz, Hutton, Kostecki, Mitchem, Howard, Wernick[2], McCarthy, and Gresham (each a "Defendant Officer" and together, the "Defendant Officers"). At all relevant times, each Defendant Officer acted as an agent or employee of the City.

17.     Defendant Cook County is a governmental entity within the State of Illinois, which consists in part of its Cook County State's Attorney's Office, and was at all relevant times the employer of Defendant Goebel. Defendant Cook County is a necessary party to this lawsuit.

## FACTS

### The Crime

1.     On December 12, 1996, at about 9:00 p.m., Ronald Walker was standing near the intersection of Church Street and Dodge Avenue in Evanston, Illinois, when two Black men approached him.

2.     The men said something to Walker and then fired several gunshots, striking and killing Walker.

3.     The shooters ran from the scene.

4.     Several people witnessed the shooting.

### The Initial Police Investigation Leads to a Suspect Who Confesses

5.     Officers of the Evanston Police Department, including Detectives Kostecki, Jamraz, Mitchem, Hutton, and Howard; Seargent McCarthy; Lieutenant Wernick; and

---

[2] Though the nominal defendant standing in for the deceased parties is Samantha Rule, Plaintiff refers to the deceased officers as "Defendants" throughout his pleading for clarity.

Commander Gresham investigated the Walker murder.

6. On information and belief, Defendants Kostecki, Jamraz, Mitchem, Hutton, and Howard were responsible for investigating drug and gang-related crimes in Evanston.

7. Defendants Wernick, McCarthy, and Gresham supervised and approved the detectives' work on the Walker homicide investigation.

8. Defendant Goebel, a state prosecutor assigned to the Gang Prosecution Unit of the Cook County State's Attorney's Office, participated in the investigation as well.

9. Defendant Officers identified several witnesses who they claimed noticed two suspicious men walking in the area before the shooting, additional witnesses who saw the perpetrators shoot Walker, and still more witnesses who heard gunshots and then saw the perpetrators running away from the scene.

10. Defendants including Mitchem, Kostecki, and Jamraz interviewed eyewitness on the scene and back at the station.

11. Several eyewitnesses told police, including Defendants Jamraz and Kostecki, that the shooter was of average height and heavy, using words like heavy set, heavy build, chubby, and puffy cheeks to describe the perpetrator.

12. One witness told Defendants, including Jamraz, that the shooter held the gun in his left hand.

13. Ultimately, one eyewitness told police he recognized one of Walker's killers as a gang member named Gregory Boyd.

14. Boyd matched the other eyewitness descriptions of Walker's killer: he was a Black male, about 5'9", weighing 210-220 pounds.

15.     After viewing Boyd in a photo array or in-person lineup arranged by Defendant Kostecki, seven eyewitnesses identified him as one of the men wandering around the neighborhood before the killing, the shooter, and/or one of the men seen fleeing from the scene after the gunshots.

16.     One eyewitness who viewed Boyd in an in-person lineup also recognized the unique way Boyd walked, leading the witness to identify Boyd as Walker's killer.

17.     Defendant Officers arrested Boyd for Walker's murder on March 21, 1997.

18.     Boyd ultimately confessed in a statement to Defendants Jamraz, Mitchem, and others that he committed the crime with two other men.

19.     Defendant Officers released Boyd, and he was never charged.

20.     After Boyd's release, the Walker murder investigation went cold.

**Frank Drew**

21.     In December 1996, Plaintiff Frank Drew was a 16-year-old high school student living in Evanston with his mom, dad, little sister, and little brother.

22.     Drew was of average height, and he was thin, standing about 5'7" and weighing 130 pounds.

23.     Drew had nothing to do with Ronald Walker's murder.

**With No Leads, Police Frame Plaintiff to Close the Case**

24.     More than a year after Walker's murder, the crime remained unsolved.

***Ruff Agrees to Implicate Plaintiff***

25.     In January 1998, Evanston Police arrested Maurice Ruff, the leader of the Evanston sect of the Vice Lords street gang, on drug and weapons charges that had nothing to do with the Walker murder.

26.     Ruff was facing up to 45 years in prison.

27.     Police were still under pressure to close the then-cold Walker homicide investigation.

28.     While questioning Ruff about the drug and weapons charges, Defendant Officers threatened Ruff with charges on the Walker murder, falsely claiming that physical evidence and other witnesses implicated Ruff.

29.     Ruff agreed to provide a statement on the Walker murder.

30.     Ruff then falsely told Defendants Kostecki, Howard, and Mitchem that Plaintiff and a man named Jeffrey Lurry came to his home an hour after Walker's murder and told Ruff they shot Walker because Walker was a member of the Gangster Disciples.

31.     Defendants knew Plaintiff was completely innocent of Walker's murder.

32.     For one, Plaintiff did not match the unanimous eyewitness description of Walker's killer as an overweight man.

33.     Nor is Plaintiff left-handed.

34.     Moreover, not one of the many eyewitnesses to the murder identified Plaintiff as one of the perpetrators.

35.     Indeed, at least two eyewitnesses personally knew Plaintiff and never so much as suggested to police that Plaintiff was the person who killed Walker.

36.     No physical evidence tied Plaintiff to the killing.

37.     Nevertheless, eager to close the Walker homicide investigation, and armed with Ruff's statement, which they knew was false, Defendant Officers set out to manufacture a case against Plaintiff.

### *Defendants Manufacture Witness Statements to Corroborate Ruff's Story*

38.     Defendants coerced several witnesses into providing false statements corroborating Ruff's concocted story.

39.     First, Defendants Mitchem, Howard, Wernick, and Goebel flew to Florida to find Lurry, who was staying there with his mother.

40.     In Florida, Mitchem, Howard, and Wernick brought Lurry to the sheriff's station for questioning.

41.     Lurry denied involvement in Walker's killing.

42.     Defendant Officers knew Ruff was a high-ranking gang member who had the ability to influence and control lower-ranking members like Lurry.

43.     Defendant Officers also knew that Ruff had power over Lurry because Lurry was in a relationship with Ruff's sister.

44.     To coerce Lurry into implicating himself and Plaintiff, Defendants Mitchem, Howard, and Wernick agreed with Defendant Kostecki—who was back in Evanston—to arrange a phone call between Ruff and Lurry.

45.     Kostecki brought Ruff to the Evanston police station for the call.

46.     Immediately after speaking with Ruff over the phone, Lurry agreed to confess and implicate Plaintiff.

47.     Lurry then gave a statement to Defendants Mitchem, Howard, Wernick, Kostecki, and Goebel falsely implicating himself and Plaintiff in Walker's shooting.

48.     Defendants Mitchem, Howard, Wernick, and Goebel knew Lurry's statement was false.

49.     Defendants Mitchem, Howard, and Wernick arrested Lurry for Walker's murder, knowing his statement was coerced and false.

50.     Then, Defendant Goebel, along with Defendants Mitchem and Wernick, secured a written statement from Lurry that included even more false details implicating Plaintiff in Walker's shooting.

51.     Defendants Goebel, Mitchem, and Wernick fed Lurry these additional false details and pressured him to repeat them.

52.     Defendants Goebel, Mitchem, and Wernick knew the additional details were false and that Lurry only repeated them because they pressured Lurry to do so.

### Defendants Extract a False Confession from Plaintiff

53.     The day after Lurry's false statement, on February 17, 1998, police took Plaintiff's fingerprints at the Evanston Police Department in connection with a matter unrelated to the Walker murder.

54.     After Plaintiff left the station, Evanston Police officers found Plaintiff, arrested him, and falsely told him there was a problem with his fingerprints that required him to come back to the station.

55.     Back at the station, Plaintiff was held in an interrogation room for hours before being taken to lockup, where he remained overnight.

56.     Police falsely told Plaintiff the officers who would redo his fingerprints were gone until the next morning.

57.     Defendant Officers were holding Plaintiff for the Walker murder.

58.     Defendant Officers did not tell Plaintiff he was being held for the Walker murder.

59.     Early the next morning, Defendants Kostecki and Hutton brought Plaintiff to an interrogation room where they began questioning him about the Walker murder.

60.     Plaintiff truthfully denied any involvement in the crime.

61.     Over the course of several hours, Defendants, including Kostecki, Hutton, and Jamraz, continued interrogating the 18-year-old Plaintiff, accusing him of the murder, and feeding him details about the crime.

62.     Defendant Officers refused Plaintiff's request to call his mother.

63.     When Plaintiff continued to deny he was involved in the crime, Defendant Officers resorted to physical violence against Plaintiff, striking him multiple times.

64.     Defendant Gresham was watching from outside the interrogation room while these Defendants struck Plaintiff.

65.     Defendant Gresham consulted with Defendants about Plaintiff's interrogation while it was in progress, and he condoned and approved Defendants' tactics.

66.     After hours of interrogation and physical abuse, Defendant Officers overcame Plaintiff's will, and he agreed to sign a false statement incriminating himself and adopting the information Defendants provided him.

67.     Defendant Goebel took down a false statement implicating Plaintiff in the Walker murder.

68.     Defendants Hutton, Jamraz, and Kostecki gave Plaintiff information about Walker's murder to include in the statement while Defendant Goebel wrote it down.

69.     After having been coerced into making the false statement, Plaintiff refused to sign it.

70.     In response to Plaintiff's reluctance, Defendant Hutton put his hands on Plaintiff and threatened Plaintiff with worse physical violence than Plaintiff had already suffered.

71.     Frightened and feeling he had no other option, Plaintiff agreed to sign the false statement confessing to the crime.

72.     The Defendant Officers and Defendant Goebel knew this "confession" was false and that the only reason Plaintiff signed it was because of physical and mental coercion.

73.     After extracting the false confession, Defendant Officers arrested Plaintiff for Walker's murder.

74.     No Defendant did anything to stop the abuse, nor did any Defendant report it after the fact.

75.     Plaintiff immediately cried out about the abuse that led him to falsely confess. The same day he signed the false statement, Plaintiff told his girlfriend that the police had beaten him until he agreed to implicate himself.

76.     The following day, Plaintiff told his public defender and jail personnel about the beating.

77.     On February 24, 1998, Plaintiff was taken to see a doctor at the jail for injuries related to the beating. The doctor examined Plaintiff and identified multiple injuries consistent with Plaintiff's description of his abuse.

### Defendants Fabricate Evidence and Conceal Exculpatory Information

78.     Defendants fabricated a paper trail to substantiate the case they manufactured against Plaintiff.

79.     Among other things, Defendants Hutton and Jamraz manufactured a police report in which they falsely claimed that Plaintiff spontaneously confessed to killing Walker after

11

Defendants told Plaintiff that Lurry had implicated him in the crime. The false report contained numerous statements about the crime and Plaintiff's motive for committing the crime that were entirely made up by Hutton, Jamraz, and other police officers. The report also falsely claimed that the officers permitted Plaintiff to speak with his mother throughout his interrogation.

80.     Defendant Wernick signed off on the report knowing the information it contained was false.

81.     Defendants Kostecki and Jamraz also authored false police reports, in which they claimed that the day after Plaintiff's confession, they spoke to two men who claimed to have been present in Ruff's kitchen when Plaintiff and Lurry confessed to killing Walker.

82.     Defendant Wernick also signed off on those reports knowing the information they contained was false.

**Plaintiff's Wrongful Conviction and Imprisonment**

83.     As a result of Defendants' misconduct and based entirely on the false evidence they manufactured, Plaintiff was charged with Ronald Walker's murder.

84.     The only evidence presented at trial to implicate Plaintiff was Maurice Ruff's false statement and Plaintiff's coerced confession, which the State read to the jury.

85.     In exchange for testifying against Plaintiff and his co-defendant Lurry, Ruff was sentenced to four years for the gun and drug charges, to be served at 50%. With credit for time served, this amounted to 18 months of additional time in prison, which, as Ruff acknowledged at Plaintiff's trial, was a "pretty wonderful deal."

86.     The jury convicted Plaintiff, and the court sentenced him to 60 years in prison.

87.     After Plaintiff's direct appeal failed, Plaintiff filed a post-conviction petition on April 10, 2002.

88. The following decades of Plaintiff's life were consumed by the horror of his wrongful imprisonment.

89. Defendants' misconduct stole from Plaintiff what should have been the most formative time of his life: his last years as a teenager, all his twenties and thirties, and the beginning of his forties.

90. When his young adult life was just beginning, Plaintiff was locked in a prison, deprived of the chance to be cared for by his family, get an education, develop skills and a career, meet a life partner, start a family, and pursue his interests and passions.

91. Indeed, Plaintiff was deprived of all the basic pleasures of human experience that free people enjoy as a matter of right, including the freedom to live one's life as an autonomous person.

92. Plaintiff never knew whether the truth would come out or whether he would be exonerated.

93. During Plaintiff's imprisonment, he suffered numerous physical and emotional injuries, including the following:

   a. Plaintiff suffered a hand injury that required surgery. His injury went untreated from 2002 through 2003, causing him immense physical pain.

   b. From 2002 through 2003, Plaintiff was being harassed by a corrections officer. The officer was withholding Plaintiff's mail, cutting off Plaintiff's only means of communication with his family.

   c. For months in 2012, Plaintiff had severe, painful psoriasis that prison staff refused to treat.

    d.   Around 2017 or 2018, Plaintiff was denied the opportunity to get his associate degree because his unfounded criminal sentence was too long.

    e.   In 2017 or 2018, Plaintiff's nephew died.

    f.   In 2019, Plaintiff's little brother died. In both cases, he was forced to grieve alone from behind bars.

### Plaintiff's Exoneration

94.    Plaintiff's post-conviction petition remained pending in the circuit court for more than 20 years until 2022.

95.    During that time, Ruff admitted, under oath, that he has no idea who killed Ronald Walker and he lied to secure a deal on his own charges and in response to improper police pressure.

96.    For his part, Lurry also recanted, admitting that he falsely implicated himself and Plaintiff in response to improper police pressure.

97.    And Rodney Hicks, one of the men supposedly present at Ruff's house when Plaintiff and Lurry confessed to killing Walker, provided sworn testimony that while he was at Ruff's house the night of the murder, Plaintiff and Lurry were never there.

98.    In February 2008, while Plaintiff was serving his twentieth year behind bars for Walker's murder, Gregory Boyd murdered Javor Brooks in Evanston.

99.    Finally, on May 27, 2022, after an evidentiary hearing, the circuit court vacated Plaintiff's conviction finding newly discovered evidence of his actual innocence required a new trial.

100.    On June 17, 2022, Plaintiff walked out of prison for the first time in more than 24 years.

101.    After nearly two years on bond—with no violations or incidents—the State dropped all charges against Plaintiff on March 12, 2024.

102.    But Plaintiff's suffering did not end with his release from prison or his exoneration. Defendants' misconduct continues to cause Plaintiff extreme physical and psychological pain and suffering, humiliation, constant fear, anxiety, deep depression, despair, rage, and other physical and psychological effects.

103.    Because Defendants continued to withhold exculpatory evidence and refused to admit their own unlawful actions, Plaintiff has been threatened and harassed by people who believe Plaintiff killed Walker. This harassment occurred during Plaintiff's post-conviction hearings in 2024 and continues through the present day.

### Evanston's Policy and Practice of Wrongly Convicting
### Innocent People in Violation of the Constitution

104.    Citizen complaints of police misconduct at the Evanston Police Department were at an all-time high in 2000, just one year after Plaintiff's conviction.

105.    Before and during the period when Plaintiff was falsely charged and convicted, the City of Evanston operated a dysfunctional disciplinary system for law enforcement officers accused of serious misconduct. The City almost never imposed meaningful discipline against officers accused of violating the civil and constitutional rights of members of the public.

106.    In the years just before Plaintiff's wrongful prosecution and conviction, allegations of corruption among the Evanston Police Department officers who investigated gang crimes were so serious and numerous, the chief of police was forced to resign.

107.    Yet, on information and belief, none of these allegations of misconduct led to any meaningful discipline.

108.     As a result of the City of Evanston's failure to train or discipline its officers, those officers (including the Defendant Officers here) came to believe they could violate civilians' civil rights and cause innocent people to be charged with serious crimes without fear of adverse circumstances.

109.     The failures that enabled this belief include failing to track and identify police officers repeatedly accused of serious misconduct, failing to investigate cases where police were involved in a wrongful charge or conviction, failing to discipline officers accused of serious misconduct, and facilitating a code of silence within the police department. As a result of those failures and the code of silence, members of the Evanston Police Department acted with impunity when they violated the constitutional and civil rights of citizens like Plaintiff.

110.     The City's failure to train, supervise, and discipline its officers, condones, ratifies, and sanctions the kind of misconduct the Defendant Officers committed against Plaintiff.

111.     What's more, the City of Evanston and final policymaking officials within Evanston failed to remedy the abuse described in the preceding paragraphs, despite actual knowledge of the misconduct. They thereby perpetuated the unlawful conduct and ensured no action would be taken (independent of the judicial process) to remedy Plaintiff's ongoing injuries.

## COUNT I
## 42 U.S.C. § 1983 – Violation of Due Process
## (Fourteenth Amendment)

112.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

### A.     Deprivation of Due Process Through Trial and Conviction

113.     As described above, Defendants, while acting individually, jointly, and in conspiracy with each other, and under color of law and within the scope of their employment,

deprived Plaintiff of his constitutional right to a fair trial and his right not to be wrongfully convicted and imprisoned.

114.    In the manner described above, Defendants fabricated witness statements falsely implicating Plaintiffs in the crime.

115.    Defendants knew this evidence was false.

116.    Defendants obtained Plaintiff's conviction using this false evidence, and they failed to correct fabricated evidence they knew was false when it was used against Plaintiff during his criminal case, or at any point during his 24 years of wrongful incarceration.

117.    In addition, Defendants deliberately withheld exculpatory evidence from state prosecutors, Plaintiff, and Plaintiff's criminal defense attorneys, including evidence that Defendants had manufactured false evidence implicating Plaintiff, thereby misleading and misdirecting Plaintiff's criminal prosecution.

118.    In addition, on information and belief, Defendants concealed, fabricated, and destroyed other evidence not yet known to Plaintiff.

119.    Defendants' misconduct caused Plaintiff's unjust and wrongful criminal prosecution and deprivation of liberty, violating his right to a fair trial under the Fourteenth Amendment. Absent these Defendants' misconduct, Plaintiff's prosecution could not and would not have been pursued.

## B.    Post-Conviction Deprivation of Due Process and Access to Courts

120.    Defendant Officers, while acting under color of law, deprived Plaintiff of his right to due process of law and meaningful access to the courts by concealing from Plaintiff during his appeal and post-conviction proceedings that extensive false evidence was used to secure his conviction and sentence.

121. Defendant Officers breached constitutional, statutory, and legal obligations to disclose to the courts during post-conviction proceedings—2002 through 2020—that false evidence, including the evidence described in this complaint, had been used against Plaintiff.

122. Defendant Officers breached constitutional, statutory, and legal obligations to disclose to Plaintiff and/or the prosecution during post-conviction proceedings—2002 through 2020—exculpatory and impeachment evidence, as described in this complaint.

123. By failing to act at any point between 2002 and 2020, Defendants repeatedly ratified their own misconduct.

124. Defendants' constitutional, statutory, and legal failures persisted from 2020 when Plaintiff submitted a petition for clemency through 2022 when the petition was denied.

125. The misconduct described in this Count was objectively unreasonable, and Defendants undertook the misconduct intentionally and with total disregard for the truth and Plaintiff's clear innocence.

126. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, forced and involuntary prison labor, and other grievous and continuing injuries and damages as set forth above.

127. Defendant Officers undertook the misconduct described in this Count pursuant to the policies and practices of the City of Evanston and the Evanston Police Department, in the manner more fully described below.

## COUNT II
## 42 U.S.C. § 1983 – Coerced & False Confession
## (Fifth and Fourteenth Amendments)

128.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

129.     In the manner described above, Defendants, without probable cause to suspect Plaintiff of any crime, forced him to make false statements involuntarily and against his will, which incriminated him and were used against him in criminal proceedings, in violation of his rights secured by the Fifth and Fourteenth Amendments.

130.     In addition, Defendants, without probable cause to suspect Plaintiff of any crime, individually, jointly, and in conspiracy with each other, and under color of law and within the scope of their employment, used physical violence and extreme psychological coercion to force Plaintiff to incriminate himself against his will in a crime he had not committed, in violation of his right to due process secured by the Fourteenth Amendment. This misconduct was so severe as to shock the conscience, it was designed to injure Plaintiff, and it was not supported by any conceivable governmental interest.

131.     In addition, Defendants, acting as investigators and without probable cause to suspect Plaintiff of any crime, individually, jointly, and in conspiracy with each other, and under color of law and within the scope of their employment, fabricated a false confession, which was attributed to Plaintiff and used against Plaintiff in his criminal proceedings, in violation of Plaintiff's right to a fair trial protected by the Fourteenth Amendment.

132.     Specifically, Defendants conducted, participated in, encouraged, advised, and ordered an unconstitutional interrogation of Plaintiff, using physical violence and psychological coercion, which overbore Plaintiff's will and caused him to make involuntary statements implicating himself in Ronald Walker's murder.

133.    The Defendants wholly fabricated those false incriminating statements and attributed them to Plaintiff. Those false incriminating statements were used against Plaintiff to his detriment throughout his criminal case. They were the reason Plaintiff was prosecuted and convicted of Walker's murder.

134.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and with total disregard for the truth and Plaintiff's clear innocence.

135.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

136.    The Officer Defendants undertook the misconduct described in this under the policy and practice of the Evanston Police Department, as described below.

**COUNT III**
**42 U.S.C. § 1983 – Prosecution Without Probable Cause and Unlawful Detention**
**(Fourth and Fourteenth Amendments)**

137.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

138.    As described above, Defendants Officers and Defendant Goebel individually, jointly, and in conspiracy with each other, and under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff. They did so without any probable cause and despite knowing Plaintiff was innocent, in violation of his rights secured by the Fourth and Fourteenth Amendments.

139.    In so doing, Defendant Officers and Defendant Goebel maliciously prosecuted Plaintiff, caused Plaintiff to be deprived of his liberty without probable cause, and caused

Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

140.    The misconduct described in this Count was objectively unreasonable, and Defendants undertook the misconduct intentionally and with total disregard for the truth and Plaintiff's clear innocence.

141.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

142.    Defendant Officers undertook the misconduct described in this Count under the policies and practices of the City of Evanston and the Evanston Police Department, in the manner more fully described below.

**COUNT IV**
**42 U.S.C. § 1983 – Failure to Intervene**

143.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

144.    As described above, during the constitutional violations described in this complaint, one or more Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights.

145.    Defendants had ample, reasonable opportunities and the duty to prevent this harm but failed to do so.

146.    The misconduct described in this Count was objectively unreasonable, and Defendants undertook the misconduct intentionally and with total disregard for the truth and Plaintiff's clear innocence.

147.     As a result of these Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**COUNT V**
**42 U.S.C. § 1983 – Conspiracy to Violate Constitutional Rights**

148.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

149.     As described more fully above, Defendant Officers and Defendant Goebel, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to fabricate and suppress evidence to detain, prosecute, and convict Plaintiff, without regard for Plaintiff's guilt or innocence, and thereby to deprive him of his constitutional rights.

150.     In so doing, these co-conspirators agreed to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect each other from liability for depriving Plaintiff of those rights.

151.     In furtherance of their conspiracy, each co-conspirator committed overt acts and was otherwise a willful participant in joint activity.

152.     The misconduct described in this Count was objectively unreasonable, and Defendants undertook the misconduct intentionally and with total disregard for the truth and Plaintiff's clear innocence.

153.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

154.     Defendant Officers undertook the misconduct described in this Count under the policies and practices of the City of Evanston and the Evanston Police Department, in the manner more fully described below.

## COUNT VI
### 42 U.S.C. § 1983 – Municipal Liability Claim against the City of Evanston

155.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

156.     As described in detail above, the City of Evanston is liable for the violation of Plaintiff's constitutional rights because Plaintiff's injuries were caused by the City's policies, practices, and customs.

157.     At all relevant times, and for some time before Plaintiff's wrongful conviction, the City of Evanston had notice that officers and agents of the Evanston Police Department and the City of Evanston deprived individuals suspected of criminal activity, like Plaintiff, of their right to due process, including by facilitating the prosecution of suspects based on fabricated evidence, including fabricated witness statements obtained through coercion.

158.     This misconduct was allowed to occur because the City of Evanston's leaders, supervisors, and policymakers directly encouraged and were thereby the moving force behind it. They did this by failing to adequately train and supervise their officers, agents, and employees on proper interrogation techniques and by failing to adequately punish and discipline past instances of similar misconduct, which directly encouraged future abuses like those affecting Plaintiff.

159.     The misconduct described above—the same misconduct that harmed Plaintiff— was permitted under de facto policies of the City of Evanston because policymakers with authority exhibited deliberate indifference to the misconduct, thereby effectively ratifying it.

160.     Defendant Officers undertook the misconduct described in this Count pursuant to the City of Evanston's policies and practices in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of people with final policymaking authority for the City of Evanston or were committed by people with such final policymaking authority.

161.     Plaintiff's injuries were directly and proximately caused by officers, agents, and employees of the City of Evanston, including the individually named defendants, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

**COUNT VII**
**State Law Claim – Malicious Prosecution**

162.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

163.     As described above, Defendants individually, jointly, and in conspiracy with each other, and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so.

164.     In so doing, Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. Those judicial proceedings were instituted and continued maliciously, resulting in injury.

165.     The judicial proceedings were terminated in Plaintiff's favor and in a manner indicative of his innocence when his conviction was vacated and charges against him were dropped in March 2024.

166.     The misconduct described in this Count was objectively unreasonable and Defendants undertook the misconduct intentionally, with malice, and with total disregard for the truth and Plaintiff's clear innocence.

167.     As a result of Officer Defendants' and Defendant Goebel's misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**COUNT VIII**
**State Law Claim – Intentional Infliction of Emotional Distress**

168.   Plaintiff incorporates each paragraph of this complaint as if fully restated here.

169.   Defendants' actions, omissions, and conduct set forth above were extreme and outrageous. Defendants' actions were rooted in an abuse of power and authority, and Defendants undertook them intending to cause—or with reckless disregard for the probability their conduct would cause—severe emotional distress to Plaintiff.

170.   As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**COUNT IX**
**State Law Claim – Willful and Wanton Conduct**

171.   Plaintiff incorporates each paragraph of this complaint as if fully restated here.

172.   At all relevant times, Defendants had a duty to refrain from willful and wanton conduct.

173.   Defendants could foresee framing Plaintiff by fabricating evidence, coercing a false confession, suppressing exculpatory information, and engaging in the other misconduct described above would inevitably result in extreme harm to him.

174.   Avoiding that injury to Plaintiff would not have burdened Defendants in any way.

175.   Notwithstanding that duty, Defendants acted willfully and wantonly through a course of conduct that showed an utter indifference to, or conscious disregard of, Plaintiff's rights.

176.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**COUNT X**
**State Law Claim – Civil Conspiracy**

177.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

178.     As described above, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose and/or to achieve a lawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect each other from liability for depriving Plaintiff of his rights.

179.     In furtherance of their conspiracy, each co-conspirator committed overt acts and was otherwise a willful participant in joint activity.

180.     The violations of Illinois law described in this complaint, including Defendants' malicious prosecution of Plaintiff and their intentional infliction of emotional distress, were accomplished by Defendants' conspiracy.

181.     The misconduct described in this Count was objectively unreasonable, and Defendants undertook the misconduct intentionally and with total disregard for the truth and Plaintiff's clear innocence.

182.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT XI
## State Law Claim – Respondeat Superior

183.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

184.     While committing the misconduct alleged in the preceding paragraphs, the Defendant Officers were employees, members, and agents of the City of Evanston, acting at all relevant times within the scope of their employment.

185.     Defendant City of Evanston is liable as principal for all torts committed by its agents.

186.     While committing the misconduct alleged in the preceding paragraphs, the Defendant Goebel was an employee, member, and agent of Cook County, acting at all relevant times within the scope of his employment.

187.     Defendant Cook County is liable as principal for all torts committed by its agents.

## COUNT XII
## State Law Claim – Indemnification

188.     Plaintiff incorporates each paragraph of this complaint as if fully restated here.

189.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

190.     The individual defendants were employees, members, and agents of Defendant City of Evanston or Cook County, Illinois, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

191.     Defendant City of Evanston is responsible for paying any judgment entered against Defendant Officers.

192.    Defendant Cook County is responsible for paying any judgment entered against Defendant Goebel.

WHEREFORE, Plaintiff Frank Drew respectfully requests that this Court enter a judgment in his favor and against Defendants Jeff Jamraz; James Hutton; John Howard; R. McCarthy; Michael Gresham; Samantha Rule, as special representative for Charles Wernick, Carlos Mitchem, and Mark Kostecki; Steven Goebel; the City of Evanston; and Cook County, awarding compensatory damages, attorneys' fees, and costs against each Defendant; punitive damages against each Defendant other than Samantha Rule; and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, Frank Drew, hereby demands a trial by jury under Federal Rule of Civil Procedure 38(b) on all issues so triable.


Dated: February 17, 2026                    Respectfully submitted,

                                            FRANK DREW

                                    By:     /s/ Alison Leff
                                            *One of Plaintiff's Attorneys*

                                            Jon Loevy
                                            Rachel Brady
                                            Alison R. Leff
                                            Alyssa Martinez
                                            LOEVY + LOEVY
                                            311 N Aberdeen St, 3rd Fl.
                                            Chicago, IL 60607
                                            alison@loevy.com